CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 07 2014

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CINDEREE C. CHAPPELL, ) | |
| ) | Civil Action No. 7:13-CV-00557 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| CAROLYN W. COLVIN, Acting ) | Chief United States District Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether the plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Cinderee C. Chappell, is forty-six years old and has a tenth grade education. Ms. Chappell worked as a seamer for a sock company through July 2007. On May 20, 2010, Ms. Chappell filed applications for disability insurance benefits and supplemental security income benefits. In filing these claims, Ms. Chappell alleged that she became disabled for all forms of

substantial gainful employment on April 17, 2010.[1] She alleges that she has remained disabled to the present time. The record reveals that Ms. Chappell met the insured status requirements of the Act at all times covered by the final decision of the Commissioner. See, gen., 42 U.S.C §§ 416(i) and 423(a).

Ms. Chappell's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated June 27, 2012, the Law Judge decided that Ms. Chappell is not disabled. The Law Judge found that Ms. Chappell suffers from several severe impairments, including "degenerative changes of the cervical and lumbar spine; fibromyalgia; asthma; high blood pressure; gastroesophageal reflux disease; left shoulder bursitis; obesity; depression; adjustment disorder; personality disorder; and history of methamphetamine use." Tr. 16. Nevertheless, the Law Judge determined that Ms. Chappell retains the residual functional capacity to perform a range of sedentary work. The Law Judge assessed Ms. Chappell's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can never push, pull, or operate foot controls; can never kneel, crawl, or climb ladders, ropes, or scaffolds; can frequently handle objects and finger; should avoid concentrated exposure to irritants, chemicals, and hazards; and is limited to work involving simple, routine, repetitive tasks.

Tr. 19. Given such a residual functional capacity, and after considering Ms. Chappell's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that although Ms. Chappell could not return to her past work as a seamer, she retains sufficient functional capacity to perform work as a call-out operator, an addresser, or an ampoule sealer. Accordingly, the Law Judge ultimately concluded that Ms. Chappell is not

---

[1] This date falls one day after another Administrative Law Judge considered Ms. Chappell's previous application for disability insurance benefits and supplemental security income and found that she was not disabled on April 16, 2010.

2

disabled, and that she is not entitled to benefits under either federal program.  See 20 C.F.R. §§ 404.1520(g) and 416.920(g).  Ms. Chappell then sought review by the Social Security Administration's Appeals Council.  The Appeals Council denied Ms. Chappell's request for review and adopted the Law Judge's opinion as the final decision of the Commissioner.  Having exhausted all available administrative remedies, Ms. Chappell has now appealed to this court.

In determining whether the Law Judge's decision is supported by substantial evidence, the court is guided by the statutory framework and well-established case law.  While a plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment.  See 42 U.S.C. § 423(d)(2).  There are four elements of proof which must be considered in making such an analysis.  These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age.  Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After reviewing the record in this case, the court is unable to conclude that the Commissioner's denial of Ms. Chappell's applications for benefits is supported by substantial evidence.  The Law Judge, in reaching his decision, afforded "considerable" weight to the previous denial decision, dated April 16, 2010, and "great" weight to the opinions offered by Dr. William Humphries following his examination of Ms. Chappell on August 4, 2010.  Tr. 26-27.  By contrast, the Law Judge placed "little" weight on the opinions offered by Dr. Robert Stephenson following his examination of Ms. Chappell on June 14, 2012.  The court concludes that, by discounting Dr. Stephenson's opinions, the Law Judge failed to properly account for the

3

deteriorating nature of Ms. Chappell's physical impairments. In light of the entire medical record, including the most recent medical opinion offered by Dr. Stephenson, the court finds that the Commissioner's final decision is not supported by substantial evidence, and that Ms. Chappell has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

The medical record shows that Dr. Humphries, a board-certified emergency room specialist, examined Ms. Chappell at the state agency's request on August 4, 2010. Dr. Humphries diagnosed diastolic hypertension; chronic cervical, thoracic, and lumbar strain with degenerative disc disease, by history, with left sciatica; fibromyalgia, by history, with multiple myalgias; asthma, by history; and bilateral carpal tunnel syndrome. Tr. 414. As a result, Dr. Humphries opined that Ms. Chappell retains the ability to lift up to twenty-five pounds occasionally and ten pounds frequently; sit six hours, and stand and walk two hours, in an eight hour day. He opined that Ms. Chappell could never climb, kneel, or crawl; should avoid heights, hazards, and fumes; and could not continuously operate foot or hand controls. Tr. 414-15.

Following Dr. Humphries' evaluation, Ms. Chappell continued to seek treatment for her various physical impairments, including fibromyalgia, arthritis, and degenerative disc disease. The record reflects that Ms. Chappell visited Twin County Regional Hospital on September 12, 2010, complaining of pain and left leg numbness. X-rays performed that day showed mild dextro-convex scoliosis of the lumbar spine with disc space narrowing and osteophyte formation from T10 to L4, most severe from L1 to L2, representing spondylosis and mild scoliosis. Tr. 420-23. Ms. Chappell visited the same hospital again on November 13, 2010 with similar complaints, and x-rays performed that day showed degenerative disc disease at each level of the lumbar spine and lumbar scoliosis. Tr. 417-19. Ms. Chappell visited North Hospital of Surrey

County on January 29, 2011, complaining that she lost her balance and fell. X-rays from that visit showed multilevel cervical spondylosis with moderate foraminal stenosis at C3-4 and moderate to severe stenosis at C5-C6. Tr. 550-58. On September 27, 2011, Ms. Chappell visited North Hospital of Surrey County, complaining of left facial numbness, head scalp numbness, and left upper extremity numbness; after stroke was ruled out, these symptoms were suggested to be the result of her fibromyalgia and degenerative disc disease. X-rays performed that day showed numerous mild circumferential disc bulges, as well as some advanced degenerative changes. Tr. 461-483. Ms. Chappell also had x-rays performed on March 2, 2012, which showed mild bilateral sacroiliac joint space narrowing and mild medial femorotibial joint compartment narrowing consistent with early arthritic change and chronic osteitis pubis. Tr. 651. Ms. Chappell also visited the Twin Counties Free Clinic on several occasions in 2011 and 2012 (Tr. 588, 585, 635), where she was diagnosed with degenerative disc disease and chronic pain.[2] Tr. 588.

On June 14, 2012, Ms. Chappell was examined by Dr. Stephenson at her request. Dr. Stephenson, a board-certified orthopedic specialist, considered Ms. Chappell's medical record, including the treatment records from the period following Dr. Humphries' examination in 2010. In his report, Dr. Stephenson noted clinical findings of diffuse tenderness along the cervical paraspinal and trapezial muscles, extending down into the periscapular muscles, with middle muscle tightness; diffuse tenderness over the anterior chest wall region; diffuse trigger points over the entire trunk region; diffuse lumbar paraspinal tightness and tenderness; minimal tenderness

---

[2] During this same period, Ms. Chappell also received treatment for several mental impairments, including depression, adjustment disorder, and personality disorder. Tr. 16. This treatment included two hospitalizations since she was denied benefits in 2010. During the first hospitalization, which occurred in June 2011, Ms. Chappell was assigned a global assessment of functioning, or GAF, of 60. Tr. 611. During the second hospitalization in February 2012, however, she was assigned a GAF of 28 (Tr. 629), which falls within the range indicating that the individual has an "inability to function in almost all areas." Smith v. Astrue, 2010 U.S. Dist. LEXIS 110085, at *31 n.10 (W.D. Va. 2010). Therefore, although the record is not exceedingly well developed with respect to Ms. Chappell's mental health, it nonetheless suggests that her mental condition has also been deteriorating since the 2010 denial decision.

5

along the thoracic paraspinal muscles; localized subacromial pain in both shoulders with positive impingement; stiffness on extremes of motion; diffuse tenderness extending down over the sacralcoccygeal region; and mild hamstring tightness. Tr. 664-65. Dr. Stephenson's impression was chronic neck and low back pain related to significant degenerative changes of the lumbar and cervical spine with tenderness related to fibromyalgia, and he noted that Ms. Chappell's prognosis was fair to poor, given the natural history of degenerative changes of the spine. Tr. 666. Dr. Stephenson opined that Ms. Chappell could lift and carry no more than ten pounds frequently and no more than twenty pounds occasionally; could occasionally bend, stoop, or crouch; could not perform floor to waist lifting; and could sit for up to four hours, and stand or walk for a combined total of one to two hours, in an eight hour day. Tr. 666.

Dr. Humphries and Dr. Stephenson do not qualify as Ms. Chappell's treating physicians. Therefore, their opinions cannot be accorded the greater measure of weight contemplated for such regular treatment providers under the governing regulations. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Instead, the following factors must be considered to determine the weight attributable to the medical opinion evidence of record: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) and other factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Under this framework, the Law Judge afforded Dr. Stephenson's June 2012 opinion "little" weight, deciding that Dr. Stephenson's clinical findings of mild to moderate physical symptoms did not support the significant limitations that he found; that his opinions were not supported by the medical record; that his opinion was inconsistent with that of Dr. Humphries; and that Ms. Chappell had sought Dr. Stephenson's opinion "in an effort to generate evidence for [her] appeal." Tr. 27. The court finds that the Law Judge erred by according "little" weight to

Dr. Stephenson's opinion and relying instead on the earlier opinions set forth by Dr. Humphries and in the 2010 denial decision.

At the outset, the court notes that the purpose for which Ms. Chappell sought an examination by Dr. Stephenson is not a specific, enumerated factor to be considered when determining the weight of the evidence resulting from his examination. Although that purpose may constitute an "other factor" that can be properly considered by the Law Judge, the court does not believe that Dr. Stephenson's otherwise credible opinion should be discounted simply because Ms. Chappell sought that opinion in support of her claim of disability.

The court finds that Dr. Stephenson's 2012 opinion, which describes Ms. Chappell's condition as more severe than Dr. Humphries' 2010 opinion, is consistent with the additional medical records available for his review and his own observations of Ms. Chappell's impairments, particularly her fibromyalgia and degenerative disc disease. See Tucker v. Astrue, 2013 U.S. Dist. LEXIS 46624, at *13 (W.D. Va. 2013) (stating that some "normal physical examination findings…are not unusual or highly relevant to diagnosing fibromyalgia, or its severity, as fibromyalgia patients typically manifest normal strength, neurological reactions, and range of motion."). His opinion is also consistent with the nature of Ms. Chappell's medical conditions, which would be expected to worsen over time. See Armstrong v. Astrue, 2008 U.S. Dist. LEXIS 116090, at *9 (D.S.C. Dec. 18, 2008) (finding Law Judge erred in not adequately addressing evidence of deterioration of claimant's condition after issuance of opinion evidence to which "great" weight was accorded). The court thus concludes that the Law Judge erred when it afforded Dr. Stephenson's opinion only "little" weight, particularly given that he is a board-certified orthopedic surgeon with expertise in the types of impairments from which Ms. Chappell suffers. See 20 C.F.R. § 404.1527(d)(5). Dr. Stephenson's opinion, in turn, supports

7

Ms. Chappell's claim of total disability, as he found that she could not work a full eight hour day. Tr. 62-63.

Considering Dr. Humphries' report alone, the Law Judge may have properly decided that Ms. Chappell was not disabled as of August 2010. However, the later medical imaging and treatment records, as well as Dr. Stephenson's report, reflect the deterioration of Ms. Chappell's condition and support her claim of total disability. The court therefore concludes that the Commissioner's final decision that Ms. Chappell is not disabled is not supported by substantial evidence. Moreover, inasmuch as Ms. Chappell has met the burden of proof in establishing total disability for all forms of substantial gainful employment, judgment will be entered in her favor.

As referenced in this memorandum opinion, the court believes that Ms. Chappell's condition worsened after Dr. Humphries' examination. Considering the hospital records available for the court's review, the court finds that Ms. Chappell met the burden of proof establishing that she became disabled for all forms of substantial gainful employment on January 29, 2011, when the severity of the degeneration of her cervical spine was confirmed by x-ray.

For the reasons as stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must therefore be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act for entitlement to disability insurance benefits, judgment will be entered in favor of plaintiff. The final decision of the Commissioner will be reversed and the case remanded for the establishment of proper benefits. The Commissioner's final decision denying supplemental security income benefits will also be reversed to the extent that the denial was based on the finding that plaintiff is not disabled. However, since the Commissioner has apparently not considered whether plaintiff meets the financial eligibility requirements under that

benefit program, the court must remand the case for an appropriate determination. An order and judgment in conformity will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

ENTER: This 7th day of November, 2014.

/s/ Glen Conrad
Chief United States District Judge